Curtis A. RAYBORN, Sr., Plaintiff,

v.

AUBURN UNIVERSITY,
et. al., Defendants.

No. 3:03CV839–M.

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 11, 2004.

Janice Spears–Turk, Juraldine Battle–Hodge, Montgomery, AL, for Plaintiff.

David R. Boyd, Dorman Walker, Balch & Bingham, Montgomery, AL, Lee F. Armstrong, Auburn University, AL, Rhonda Mayse Garman, Montgomery, AL, for Defendants.

William F. Walker, pro se.

## MEMORANDUM OPINION AND ORDER

McPHERSON, United States Magistrate Judge.

This case is before the court on a Motion for Summary Judgment (Doc. # 45), filed on 28 May 2004, and a Motion to Strike (Doc. # 55), filed on 6 July 2004 by Auburn University, Auburn Trustees Edward Richardson, John C.H. Miller, Jr., Robert Lowder, W. James Samford, Jr., James W. Rane, Jack Venable, Lowell Barron, Paul Spina, Jr., Charles Glover, John Blackwell, Byron P. Franklin, Sr., Earlon C. McWhorter, and Golda McDonald;[1] Auburn Chief of Police Charles Nevin ["Chief Nevin"], and Auburn Police captains Randall Cerovsky ["Capt. Cerovsky"] and Thomas Stofer ["Capt. Stofer"][collectively referred to as the "defendants"].

Upon consideration of the motions, the plaintiff's response, and supporting evidentiary materials, the court finds that the Motion for Summary Judgment (Doc. # 45) should be granted and the Motion to Strike (Doc. # 55) should be denied as moot.

## I. PROCEDURAL HISTORY AND FACTS

Curtis A. Rayborn, Sr. ["Rayborn"] filed this lawsuit on 8 August 2003 (Compl.,

Doc. # 1), after satisfying the statutory prerequisites for a Title VII claim.[2] He alleges that the defendants have violated "Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq." (Doc. # 1, p. 1). He contends that he has been "adversely affected by discrimination involving demotion, promotion, compensation, assignments, and other terms and conditions of employment as a result of [the] Defendants failing to remedy systemic employment discrimination on the basis of race" (Doc. # 1, p. 1).

Rayborn, an African American and a member of the Alabama National Guard, was first employed by the Auburn University Department of Public Safety in March 1994 (Doc. # 1, p. 4) as a bike patrol officer (Doc. # 46, p. 3). He left his job for military duty in May 1994 (Doc. # 46, p. 3), and returned in October 1994, resuming his work as a bicycle patrol officer (Doc. # 46, p. 3). Chief Nevin promoted Rayborn to the position of patrol officer just five months later, in 1995 (Rayborn deposition page 16:7–19). As a lieutenant in the Auburn University Police Department, Rayborn was subordinate to Capt. Stofer, Capt. Cerovsky, Maj. Owens and Chief Nevin. Of those supervisors, Maj. Owens is African American (Nevin Affidavit, pp. 1–2).

When a lieutenant's position became available in 1999, Rayborn and two white officers applied for the position. Rayborn outscored the other officers, and Chief Nevin promoted him to the position of police lieutenant (Doc. # 46, p. 3). He held that rank from 1999 until he was demoted to the position of police officer on

1. The Auburn Trustees are sued in their official capacities only.

2. The plaintiff satisfied the statutory prerequisites by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ["EEOC"] on 21 July 2004 (Defendant's Exhibit 3–10). Thereafter, he received a "Right-to-Sue" letter from the Civil Rights Division of the Department of Justice on 9 May 2003 (Defendant's Exhibit 3–3).

13 May 2002 (Doc. # 1, p. 3). The demotion forms the basis for his complaint and therefore, the events surrounding it are the focus of this opinion.

Rayborn was one of the department's officers certified in the use of traffic radars (Doc. # 46, p. 22). His tendency to conduct simultaneous training of all of the officers under his command from time to time presented administrative problems. In 2001, his superiors advised him that this was an unacceptable practice, and Rayborn was ordered to cease conducting simultaneous training of all officers under his command. The order was never rescinded or modified (Doc. # 46, p. 12 citing to Rayborn Deposition: 33:18–34:1).

On 28 April 2002, Rayborn called all of his officers to headquarters for a twenty-five minute training session. On the same day, Capt. Cerovsky told Rayborn that Capt. Nevin wanted an officer to "stake out" the Mell Street parking lot on Auburn's campus. During his deposition, Rayborn acknowledged that Capt. Cerovsky said:

> He [Chief Nevin] wants you to put an officer in the Mell Street C–Zone [parking lot] and see if we can try to catch the person that's breaking into the vehicles.

(Rayborn Dep. at p. 25:2–5). The Mell Street parking lot had been the focal point of automobile theft and vandalism. Rayborn conducted training on that evening, and, although he took officers by the parking lot, he did not place an officer at the parking lot. Instead, he focused their at-tention on campus fraternity parties and allocated them accordingly.

During Rayborn's shift that evening, someone vandalized a car parked in the Mell Street lot. Thereafter, Chief Nevin demoted Rayborn to patrol officer, citing "gross insubordination" and failure to follow orders from superior officers as justification for his decision. Rayborn contends that, on the evening in question, he wanted to familiarize his officers with a new handbook issued by the department (Rayborn Dep. at 51:22) and that he believed he could "make decisions based upon the circumstances" (Rayborn Dep. at 35:18 to 36:3).

## II. STANDARD OF REVIEW

Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party.[3] Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir.1996).

 Consideration of a summary judgment motion does not lessen the burden on the nonmoving party, i.e., the nonmoving party still bears the burden of coming forth with sufficient evidence on

---

**3.** The Supreme Court explained that:
[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation,

there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.
Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted).

each element that must be proved.[4] *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990); *see Celotex* 477 U.S. at 322–23, 106 S.Ct. 2548. The non-moving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Green v. Pittsburgh Plate and Glass Co.*, 224 F.Supp.2d 1348, 1352 (N.D.Ala.2002) citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, "[a] judge's guide is the same standard necessary to direct a verdict: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law'." *Id.* at 259, 106 S.Ct. 2505. "Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505.

## III. DISCUSSION

The defendants have presented three issues for the court's resolution: (1) whether Rayborn's account of statements allegedly made by Major Owens should be struck as hearsay, (2) whether claims recited in the complaint but not presented to the Equal Employment Opportunity Commission ["EEOC"] should be considered, and (3) whether Rayborn makes a *prima facie* case for race discrimination. According to the defendants, the sufficiency of Rayborn's claims turn on whether he has produced a non-black comparator, who was similarly situated but treated differently.

For the reasons set forth herein, the court finds that: (1) the claims recited in the complaint but not presented to the EEOC should not be considered; (2) the Motion for Summary Judgment (Doc. # 45) should be granted; and (3) the Motion to Strike (Doc. # 55) should be denied as moot.

### A. Propriety of Claims Before the Court

The defendants argue that Rayborn included claims in his complaint that were not presented to the EEOC for resolution first (Doc. # 46, p. 29). In particular,

> Rayborn's sworn EEOC charge does not mention the manner in which reports are handled, the manner in which information is disseminated, secret taping of conversations, having another officer question his decisions, a lack of due process, military leave, the condition of patrol cars, access to management, and being subject to a commitment by Lt. Butler ... Under these circumstances, Rayborn is precluded from asserting

***

4. "[I]f on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury, ... [the court must] grant summary judgment [for the defendant]." *Earley* 907 F.2d at 1080 (citations omitted). In *Earley* the Court of Appeals further emphasized:

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson* 477 U.S. at 252, 106 S.Ct. 2505.

\* \* \*

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted) (emphasis added); *accord Hudson v. Southern Ductile Casting Corp.* 849 F.2d 1372, 1376 (11th Cir.1988).

*Earley*, 907 F.2d at 1080–81.

these claims in this action, and they should be dismissed without further analysis.

(Doc. # 46, p. 28).

■ In his charge of discrimination, filed with the EEOC on 19 June 2002, Rayborn unquestionably focuses upon his demotion from lieutenant to police officer. He discusses a wide range of work conditions and multiple grievances that he had against his superior officers, including Capt. Cerovsky and Chief Nevin. The grievances include issues of hiring, attendance at work, promotion, training, supervision, employee evaluation, and discipline. The claims recited in the complaint are similarly broad. In each document, Rayborn makes the following exemplary allegations:

A. Rayborn was "subjected to adverse terms and conditions of employment as it relates to consideration of career enhancement opportunities, travel, pay and benefits for [college/personal school attendance]" (Doc. # 1, p. 4; Defendant's Exhibit 3–10, p. 1).

B. "[W]hites and members of the unprotected race group that have actually violated the offenses of which [the] Plaintiff [/I] have been accused have not been disciplined or demoted" (Doc. # 1, pp. 4–5; Defendant's Exhibit 3–10, p. 1).

C. Rayborn was demoted because he was insubordinate when disobeying two orders issued by Chief Nevin (Doc. # 1, p. 4; Defendant's Exhibit 3–10, p. 1).

The court, therefore, cannot conclude that the complaint presents broader issues than the charge of discrimination.

However, that Rayborn presented the same general claims to the EEOC for resolution as he articulated in his complaint does not necessarily lead to the conclusion that those claims are properly before this court. The EEOC is prohibited from considering claims that are statutorily stale. Under Title VII, a plaintiff must file a charge with the EEOC within 180 days of the alleged discriminatory action. 42 U.S.C. § 2000e–5 et seq. The Court of Appeals has held that failure to file charges with the EEOC within the 180–day time period results in a bar of claims included in the untimely charge. *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 662 (11th Cir.1993), *cert. denied* 513 U.S. 814, 115 S.Ct. 69, 130 L.Ed.2d 24 (1994). Thus, the agency could not consider for relief any claims based upon events that occurred before 19 December 2001.

Several of the instances of alleged discrimination discussed in Rayborn's addendum to his charge of discrimination occurred beyond the permissible time period. For example, he alleged acts of discrimination that "circumvent[ed] the normal internal problem solving process on at least ten occasions since 1999", without specifying the dates. He alleged that Capt. Cerovsky discriminated against him in his annual employee evaluation "[e]ach year for the last three years". Rayborn further alleged in his complaint that his employer discriminated against him by refusing to allow him to pursue a masters degree "[f]rom 1998 to approximately 2001" (Doc. # 1, p. 5).

■ Thus, as an initial finding, the court concludes that none of the claims cited by Rayborn which are premised upon events which occurred before 19 December 2001 are cognizable in this action. The EEOC had no jurisdiction to consider claims based upon facts which occurred before that date, and the claims filed in a federal action cannot extend beyond those claims over which the EEOC had jurisdic-

tion. See *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir.1983).

Moreover, the parties have now filed a Pretrial Order following the pretrial conference conducted on 6 August 2004. In the proposed order, the plaintiffs allege only one claim based upon a specific event, namely, the demotion claim. All of the other claims recited by the plaintiff are vaguely worded and refer only generally to discriminatory acts, including career enhancement opportunities, travel, pay and benefits for college attendance (Doc. # 58).

It thus appears that the only claims lawfully before this court are the following:

A. The demotion claim, based upon the events of 28 April 2002 and thereafter;

B. Claims regarding career enhancement opportunities, travel, pay and benefits for college attendance that are based upon events which occurred after 19 December 2001.

## B. Merits of Claims Before the Court

Regardless of the particulars of Rayborn's claims, he must satisfy the same conditions to set forth a prima facie case of race discrimination in articulating all of them. He must show that "(1) that [he] was a member of a protected class (black); (2) that he was qualified for the position at issue; (3) that an adverse employment action was taken against him; and (4) that the employer treated similarly situated employees outside the protected class (white employees) more favorably." *Green,* 224 F.Supp.2d at 1363 citing *Spivey v. Beverly Enterprises, Inc.,* 196 F.3d 1309 (11th Cir.1999).

■ There must be "evidence adequate to create an inference that an employment decision was based on an [illegal] discriminatory criterion." *Hall et al, v. Alabama Association of School Boards et al.* 326

F.3d 1157, 1166 (11th Cir.2003) citing *Intern. Brotherhood of Teamsters v. United States* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Hall,* 326 F.3d at 1166, citing *Holifield v. Reno,* 115 F.3d 1555, 1561–62 (11th Cir.1997).

■ If an employee makes a prima facie case for race discrimination, the burden shifts to the employer to rebut the presumption that the employee was discriminated against. *Hall et al, v. Alabama Association of School Boards et al* 326 F.3d 1157, 1166 (11th Cir.2003). "This may be done by the employer articulating a legitimate, non-discriminatory reason for the employment decision, which is clear, reasonably specific, and worthy of credence." *Id.* The court notes that the "employer has a burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced." *Id.* citing *McDonnell Douglas Corp. v. Green* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Upon satisfying the burden of production, "the employee then has the burden of persuading the court that the proffered reason for the employment decision is a pretext for discrimination." *Hall et al, v. Alabama Association of School Boards et al* 326 F.3d at 1166. A plaintiff may "satisfy this burden directly, by persuading the court that a discriminatory reason more than likely motivated the employer, or indirectly, by persuading the court, that the proffered reason for the employment decision is not worthy of belief." *Id.* at 1166 citing *Texas Dep't of Cmty Affairs, v. Burdine* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

For purposes of analyzing all of Rayborn's claims, it is undisputed that, as an African American, he belongs to a protected group and that, with respect to all of his claims, he was qualified or eligible for the employment benefit or condition which he sought.

### 1. The Demotion Claim

By failing to post a police officer at the Mell Street parking lot on 28 April 2002, Rayborn disobeyed a direct order of Chief Nevin, communicated to him by Capt. Cerovsky. Rayborn does not dispute the order. Thus, to satisfy the prong of the aforestated test that requires the identification of a similarly situated person, Rayborn must set forth facts which demonstrate that a person outside the protected group, namely a white police officer or employee, was treated differently after he or she disobeyed a direct order from a superior. "If a plaintiff fails to show the existence of a similarly-situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Baker v. Ala. Dep't of Public Safety, et. al.,* 296 F.Supp.2d 1299, 1306 n. 3 (M.D.Ala.2003) citing *Coutu v. Martin County Bd. of County Comm'rs,* 47 F.3d 1068, 1073 (11th Cir.1995).

"In determining whether employees are similarly-situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Baker,* 296 F.Supp.2d at 1305.

"The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1311 (11th Cir.1998) citing *Holifield,* 115 F.3d at 1562.

Construing the facts in a manner most favorable to Rayborn, the court finds that he was demoted for two reasons. First, during his shift, he removed all of the officers under his command from the field simultaneously for training on 28 April 2002 (Rayborn deposition at 41:9 to 42:19). As a result, the entire Auburn University campus was left unsecured.[5] This was in direct contravention to an edict issued from three of his superior officers, in person, on 30 August 2001.[6]

Second, he failed to follow an order given him through the chain of command (Rayborn deposition at 35:2–5). Notably, he failed to have an officer on his shift "stake out" the Mell Street parking lot on the evening of 28 April 2002 (Rayborn deposition at 38:1 to 41:8). The defendants argue that as a result of these two failures, a car was broken into at the Mell Street parking lot.[7]

Rayborn does not dispute that he was told to have an officer "stake out" the Mell Street parking lot on 26 April 2002 (Rayborn deposition at 35:2–5). Furthermore, he does not dispute that he was given orders to refrain from removing all officers from the field for simultaneous training. The latter order came from all three of his

---

5. "We objected not to his training but to the fact that while the training was in progress, no patrol officers were out on the Auburn campus" (Nevin Affidavit, p. 2, ¶ 6).

6. On August 30, 2001, Maj. Owens, and Cpt. Cerovsky, and Nevin—Rayborn's three operational supervisors-met with Rayborn and instructed him to "discontinue his practice of calling all officers on his shift off patrol to attend mandatory training at the headquarters" (Nevin Affidavit, p. 2, ¶ 6).

7. A student reported that her car had been broken into while parked at the Mell Street lot while Rayborn's training session was taking place (Rayborn deposition at 42:20 to 43:11).

superior officers, and it was never revoked, and Rayborn was demoted for failing to follow orders (Nevin Deposition at 47:3–7).[8]

█ The law of this circuit does not require that Rayborn produce a non-black comparator who, holding the same position, was given the same command(s) and responded in the same way, but did not suffer the same injury-demotion. The required showing, however, does anticipate that Rayborn will produce a non-black comparator who, upon failing to follow direct orders, was treated differently. Because he has not identified or produced such a person, his demotion claim in this court fails, and summary judgment should be granted to the defendants.

█ The court is aware of Rayborn's attempts to generalize his conduct by suggesting that he was "using personal judgment" (Doc. # 33, p. 2) when he decided that "the focus [on 28 April 2002] should be on the number of fraternity parties that were already scheduled," because "if Chief Nevin had been in town he would have thought as I did that the parking lot could be effectively monitored by mobile patrol unit and bicycling units in a cross-coverage method" (Doc. # 53, Rayborn Affidavit, Exhibit 1, p. 2, ¶ 6). In arguing that he used his "personal judgment" despite an order he received from a superior, he cited Christopher Butler as a comparator (Doc. # 33, p. 2).

Butler is a white male lieutenant in the Auburn Police Department. Rayborn stated:

On one occasion, Lieutenant Butler made a professional judgment call by volunteering his shift workers along with Plaintiff Rayborn's shift workers to provide unauthorized security to the University stadium. Per policy, a lieutenant is not authorized to make decisions for another lieutenant's shift. Butler received no formal discipline for this infraction. Whereas, when Plaintiff Rayborn used his professional judgment to redirect officers to a stake out where people's lives were threatened, not only was Plaintiff disciplined, he was demoted.

(Doc. # 33, pp. 2–3).

Assuming that Rayborn's representations are accurate, Butler's conduct, as proffered, is not similar to Rayborn's conduct. Rayborn has not contended that Butler was ordered by his superior officers to take other action, as Rayborn was. Simply put, taking action without authorization is not the same as wilful disobedience of a direct order. Thus, Butler's discipline is immaterial to the analysis.

█ Although Rayborn alleges that he was demoted because he exercised his independent judgment as a black lieutenant, "[a]n individual's opinion that he or she is the victim of discrimination on the basis of race is not sufficient, without further evidence, to establish a prima facie case of race discrimination." *Baker* 296 F.Supp.2d at 1305 citing *Holifield* 115 F.3d at 1564. "Nor will 'mere conclusory allegations and assertions ... suffice' to establish the Plaintiff's prima facie case." *Id.* at 1304 citing *Earley v. Champion*

---

8. The court's findings should not be construed, however, as having been conditioned on the burglary of the automobile. It is unclear whether the burglary occurred during the training session or during Rayborn's surveillance of the fraternity parties. For purposes of this memorandum and the resolution of the summary judgment motion generally, it is irrelevant *when* the burglary occurred. Indeed, it is irrelevant *that* the burglary occurred. Rayborn was demoted because he disobeyed orders, not because a burglary occurred.

*Intern. Corp.,* 907 F.2d 1077 (11th Cir. 1990).

While Rayborn has surmised ·that he was demoted on the basis of his race and has advanced conclusory allegations to support his claim, he has not advanced facts sufficient to make a prima facie case, because he has failed to produce a similarly situated employee. Therefore, the defendants' motion for summary judgment (Doc. # 45) is due to be granted.

## 2. Rayborn's Other Claims

■ Rayborn's other claims are so vaguely recited that the court is unable to decipher the particulars of the claims. Moreover, notwithstanding ample opportunity to articulate his claims—including his charge of discrimination before the EEOC, his complaint, his deposition, and his response to the motion for summary judgment—Rayborn has failed to articulate his non-demotion claims with sufficiently particularity for the court to apply the McDonnell Douglas standard of analysis.

The court is unable to determine, from any of Rayborn's submissions,

- when the claims of discrimination in career enhancement, travel, pay and college benefits arose;
- the circumstances of the discriminatory deprivations;
- the persons who deprived Rayborn of the benefits;
- the similarly situated person(s); or
- the damages that Rayborn sustained.

For example, in his response to the motion for summary judgment (Doc. # 53), Rayborn alleges that he was (1) excluded "out of the normal process of administration and supervision on my shift" (Doc. # 53, p. 4); (2) secretly taped as he interacted with his staff as a lieutenant (Doc. # 53, p. 4); (3) treated differently "with regard to being allowed time to attend college" (Doc. # 53, p. 5); (4) "not allowed to participate in certain training" (Doc. # 53, p. 5); (5) required to submit orders for military training while white officers were not (Doc. # 5. p. 6); (6) required to submit reports that complied with standards while white officers were not (Doc. # 53, pp. 7–8).

In none of these instances, however, does Rayborn identify specific acts of discrimination, advise the court of the dates and places of these acts, and, with respect to items (2), (5) and (6), he failed to identify how the actions were adverse. Although he discussed all of these general claims in his deposition, cited frequently by counsel in the response to the motion, he failed to identify evidentiary materials or documents or testimony that corroborated his conclusory allegations. Moreover, because his submission is deficient, the court is unable to determine the basis of his implied contention that these actions occurred because of his race. Finally, although Rayborn has alleged differential treatment, he utterly failed to set forth any facts to corroborate his conclusory allegations. Thus, he failed to set forth a prima facie case.

For all of these reasons, the defendants are entitled to summary judgment on Rayborn's other claims.

## C. Motion to Strike

Because the' motion for summary judgment (Doc. # 45) will be granted, the Motion to Strike (Doc. # 55) will be denied as moot.

## IV. CONCLUSION

For the reasons stated herein, it is the finding of the court that:

1. The Motion for Summary Judgment (Doc. # 45) is GRANTED; and

2. The Motion to Strike (Doc. # 55) is DENIED as moot.

3. All of the plaintiff's claims are DISMISSED with prejudice.